# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BRANDON SAGE,<br><br>    Defendant. | Case No. 1:14-mj-00192-SAB<br><br>MEMORANDUM DECISION AFTER COURT TRIAL<br><br>(ECF Nos. 9, 10, 11) |

On October 29, 2014, an information was filed charging Defendant Brandon Sage with operating a vehicle at a speed in excess of the speed limit in violation of 36 C.F.R. § 4.21(c). A court trial was conducted before the undersigned on March 19, 2015. The government is represented by Bayleigh Jordan Pettigrew. Defendant Sage is represented by Donna Marie Standard. Two witnesses testified at the trial: Ranger Samuel Salter who conducted the traffic stop and issued the citation, and Hanna Paulsen who was a passenger in Defendant's vehicle at the time of the traffic stop.

During the trial, defense counsel objected to the Government's admission of evidence regarding the certification of the radar device used by Ranger Salter during the incident on

1

confrontation clause grounds.[1] Upon conclusion of the testimony, the parties were ordered to file briefing on the admissibility of the certification. On March 27, 2015, the parties filed their briefs. The Government filed a reply to Plaintiff's brief on April 3, 2015. Having considered the evidence presented during the trial of this matter and the briefing filed by the parties, the Court issues the following order finding Defendant Sage guilty of a violation of 36 C.F.R. § 4.21(c).

## I.

## FACTUAL FINDINGS

Ranger Samuel Salter has been a park ranger since 2007. Ranger Salter was a seasonal ranger for the park service from 2007 through 2010 working at different parks throughout the United States. Ranger Salter has been working in Sequoia National Park since 2012 and is stationed at the Log Pole Subdistrict. Sequoia National Park is in the special maritime and territorial jurisdiction of the United States in the State and Eastern District of California.

Ranger Salter was on duty on August 16, 2014, in Sequoia National Park. At the beginning of his shift, Ranger Salter tested his radar unit using the 35 and 65 mile per hour tuning forks and determined that it was in proper working order. At approximately 4:00 p.m., Ranger Salter was in his patrol vehicle heading north on the General's Highway. After he crossed the Clover Creek Bridge, Ranger Salter observed a Toyota Tundra heading south on the General's Highway. The speed limit on the stretch of roadway is 35 miles per hour. Ranger Salter visually estimated the Toyota Tundra was travelling approximately 55 miles per hour. He checked his radar unit which displayed a target speed of 56 miles per hour.

After observing the vehicle was driving in excess of the speed limit, Ranger Salter observed that the vehicle braked and slowed to 40 miles per hour. Ranger Salter turned his vehicle around and stopped the vehicle. Ranger Salter identified the driver of the vehicle, Defendant Sage, by his driver's license. After the vehicle stop, Ranger Salter tested the radar unit by performing a calibration check and determined that it was working properly.

---

[1] On the day of trial, defense counsel presented the Court with a trial brief and motions in limine which were subsequently filed into the record by the court after it was discovered that the motion and trial brief were never filed into the record by defendant's counsel. (ECF Nos. 13, 14). The ruling on the defendant's motion in limine can be found in the oral record provided prior to trial.

## II.

## DISCUSSION AND DECISION

### A.   Certification of Radar Unit

During the trial, the Government presented evidence that the radar unit used by Ranger Salter to confirm his visual estimate of the speed of Defendant Sage's vehicle had been certified on August 16, 2012. The Government moved to enter into evidence a Rule 902(11) certificate (Exhibit 3(a)), and a "Certification Concerning Design & Construction of Speed Measuring Devices 'RADAR' " prepared by Edward Cole through the testimony of Officer Salter (Exhibit 3(b)). Defendant objected to the exhibit on numerous grounds which were overruled, however, the parties were granted the opportunity to brief the issue of whether admission of the certification would violate the Confrontation Clause of the Sixth Amendment.

Defendant objects on the grounds that the document is hearsay in that Mr. Cole is attempting to qualify himself as an expert by the document and is attesting to the accuracy of the radar unit at the time that Ranger Salter used it. Further, it is Defendant's position that the statements included in the certification are testimonial because they are attesting to the accuracy of the radar unit and the tuning forks. Defendant contends that, since Mr. Cole did not appear at trial, the document should not be admitted into evidence.

The Government contends that the certification is a business record under Federal Rules of Evidence 803(6); and therefore, the testimony of Ranger Salter alone is sufficient to admit it into evidence. As a secondary means of authenticating the document, the Government provided a 902(11) declaration from the author of the document. Further, the Government argues that under Crawford v. Washington, 541 U.S. 36 (2004) and it progeny, business records are admissible absent confrontation where they are not created for the purpose of litigation. The business record at issue here was created in the ordinary course of business related to calibration and accuracy of the radar unit and tuning forks and were not created for the purpose of litigation. The Government requests that the certification be entered into evidence.

1. <u>The Certification is Admissible under the Business Record Exception to the Rule Against Hearsay</u>

Federal Rule of Evidence 803(6) provides that business records are not excluded by the rule against hearsay regardless of whether the declarant is available as witness where:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Rule 902(11) provides that a copy of a domestic record that meets the requirements of Rule 803(6), is self-authenticating and requires no extrinsic evidence of authenticity to be admitted,

> as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

In this instance, the Government has provided evidence that Defendant was given advance notice of the intent to offer the record on December 14, 2014, and again on March 13, 2015. (ECF No. 10-1; 10-3.) The Government has complied with the requirements of Rule 902(11) and the document is self-authenticating. Defendant's objection on this ground is overruled.

Ranger Salter testified that he was the custodian of records for the Parks Department for the Lodgepole subdivision. He testified that the certificate (Exhibit 3(b)) was received and kept in the regular course of the Park business. Ranger Salter and the other rangers regularly access the files and certifications in issuing citations. The Ninth Circuit has held that documents can be admitted as business records of an entity, even when the entity did not create the records, as long as the other requirements of Rule 803(6) are met. United States v. Childs, 5 F.3d 1328, 1333-34 (9th Cir. 1993). "[R]ecords a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the

4

1  records." MRT Const. Inc. v. Hardrives, Inc., 158 F.3d 478, 483 (9th Cir. 1998).

2  While Defendant argues that the Government is attempting to qualify Mr. Cole as an expert in the field, the Court finds that the document has been presented for the purpose of demonstrating that radar unit and tuning forks at issue in this action were tested by Mr. Cole and found to be met or exceed all existing performance standards on August 16, 2012. (Government's Exhibit 3(b) at p. 2.) Defendant has not shown that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6)(E). The Government has laid the appropriate foundation to have Exhibit 3(b) admitted under the business record exception to the rule against hearsay.

While Defendant argues that Mr. Cole cannot provide testimony that the machine was operating correctly on the date in question, this goes to the weight of the certification, not to the admissibility. Accordingly, Defendant's objections on the basis of hearsay are overruled.

2.  The Certification is not Testimonial

Defendant argues that admission of the certification violates his right to confront witnesses against him in this action, and therefore, must be excluded. Defendant argues the facts applicable to the radar device since it was tested: it was shipped back to the Park, moved from one car to another, etc. Defendant contends that these facts preclude the admission of the certificate. However, the conditions that the radar unit and tuning forks have been subjected to since being tested relate to the weight of the evidence and not to whether the certification is testimonial.

The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In Crawford, the Supreme Court held that testimonial statements of witnesses may only be admitted against an accused where the declarant is unavailable if the defendant has had a prior opportunity to cross examine. However, Crawford also made it clear that non-testimonial statements may be admitted against the accused without the ability to cross examine. 541 U.S. at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law. . .as would an approach that

exempted such statements from Confrontation Clause scrutiny altogether.")

It is the testimonial nature of the statements that separates it from hearsay that is not subject to the Confrontation Clause. Davis v. Washington, 547 U.S. 813, 821 (2006). Testimony is typically a declaration or affirmation made for the purpose of establishing or proving some fact. Davis, 547 U.S. at 824 (quoting Crawford, 541 U.S. at 51). While statements made to police officers during the investigation of a past offense relevant to later criminal prosecution are testimonial (such as interrogation), statements made under circumstance which objectively indicate that the primary purpose is to enable police assistance to meet an ongoing emergency are not (i.e. 911 call). Davis, 547 U.S. at 822.

In Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the Supreme Court considered whether "certificates of analysis" of evidence seized were admissible at trial without the testimony of the analyst who conducted the examination of the evidence. Melendez-Diaz, 557 U.S. at 308-309. The Court found that the certificates submitted by the analysts were incontrovertibly a sworn declaration or affirmation made for the purpose of establishing or proving some fact. Id. at 310. The certificates stated that the substance seized was cocaine which is the precise testimony that the witness would be required to provide were he called at trial. The certificate was functionally identical to the live in-court testimony. Id. at 311. The affidavits were made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial; and under the State law the sole purpose of the affidavits was to provide "prima facie evidence of the composition, quality, and the net weight" of the substance analyzed. Id. These were testimonial statements and the accused had the right to confront the analysts at trial. Id. While business records kept in the regular course of business may ordinarily be admitted at trial, that is not the case where the regularly conducted business activity is the production of evidence for use at trial. Id. at 321.

Similarly, in Bullcoming v. New Mexico, 131 S.Ct. 2705 (2011), the Supreme Court held that a certified blood-alcohol forensic report setting forth the defendant's blood alcohol content was testimonial. Id. at 2714-15. "Melendez–Diaz and Bullcoming stand for the proposition that '[a] document created solely for an 'evidentiary purpose,' ... made in aid of a police

1 investigation, ranks as testimonial.' " United States v. Anekwu, 695 F.3d 967, 974 (9th Cir. 2012).

Defendant argues that the certification is being offered to prove the fact that he was travelling 56 miles per hour. However, the certificate provided is evidence that the radar unit and tuning forks were tested and found to be accurate. Exhibit 3(b) itself is not evidence of Defendant's speed on the date in question, nor could it be as it was created two years prior to the charged offense.

"[T]he mere possibility that a record could be used in a later criminal prosecution does not render it testimonial." United States v. Rojas-Pedroza, 716 F.3d 1253, 1267 (9th Cir. 2013) (quoting United States v. Orozco–Acosta, 607 F.3d 1156, 1164 (9th Cir.2010)) (internal punctuation omitted). Some additional showing must be made that the primary purpose for the creation of document is for use in litigation. Rojas Pedroza, 716 F.3d at 1267. We determine the primary purpose of the statement objectively. Michigan v. Bryant, 131 S.Ct. 1143, 1156 (2011). Therefore, "the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." Bryant, 131 S.Ct. at 1156.

"[T]he relevant question under the Confrontation Clause is whether an individual statement is testimonial, not whether an entire document is testimonial." Rojas-Pedroza, 716 F.3d at 1268. However, when a record is made under circumstances objectively indicating that the primary purpose is non-testimonial, the ordinary contents of the record are also non-testimonial. Id.

In considering the Confrontation Clause issue, the court in Melendez-Diaz stated that it did not hold that anyone whose testimony would be relevant in establishing the accuracy of a testing device must appear at trial and that "documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." 557 U.S. at 312 n.1. Courts that have considered the admissibility of certificates verifying the accuracy of testing equipment have consistently found that such evidence is non-testimonial in nature. United States

v. Foster, 829 F.Supp.2d 354, 361 (W.D. Vir. 2011) (collecting cases).

Exhibit 3(b) was not prepared for use in Defendant's case and it is not used to prove an element of the offense. Unlike Melendez-Diaz, where evidence was seized from the defendant and sent out to a laboratory for analysis, Exhibit 3(b) is the result of a routine accuracy check of the radar device which occurred two years prior to the incident. The certificate is presented to attest to the accuracy of the tuning forks on the date that it was tested, from which the Court can draw an inference of accuracy of the radar unit on the date that it was used by Defendant Salter. As other courts have found, the certificate at issue here appears to fit squarely within the category of documents that have been found to be nontestimonial and do not require cross examination to be admitted at trial. See Foster, 829 F.Supp.2d at 362 (certificate of accuracy of Intox EC/IR II); United States v. Bacas, 662 F.Supp.2d 481, 484 (E.D. Vir. 2009) (certificate of accuracy of tuning forks used to test accuracy of radar unit); United States v. Forstell, 656 F.Supp.2d 578, 582 (E.D. Vir. 2009) (certificate of accuracy for laser and tuning forks); United States v. Thomas, at *5 (D. Md. May 7, 2014) (certificate for radar).

Although the Sixth Amendment guarantees the accused the right to confront witnesses against him, it "has always had certain well-recognized exceptions." Dowdell v. United States, 221 U.S. 325, 331 (1911). "Collateral facts that do not speak to a defendant's guilt or innocence have been excepted from Sixth Amendment protection." Bacas, 662 F.Supp.2d at 485. "Neutral statements that relate only to the operation of a machine constitute such collateral facts." Id.

Exhibit 3(b) states that the radar unit and tuning forks were submitted to Wescom for testing regarding accuracy, Mr. Cole performed accuracy testing on the radar unit and tuning forks, and determined that they met or exceeded the existing performance standards. Mr. Cole tested the radar unit and tuning forks on August 16, 2012 and certified that they would give accurate measurement of the speed of a motor vehicle when properly calibrated and operated by a trained operator to within plus or minus one mile per hour. The Court finds that since the primary purpose of Exhibit 3(b) was for routine maintenance of the equipment, it was not prepared for use at trial, and is not being used to prove an element of the offense, the certification is not testimonial and its admission does not violate the Confrontation Clause. Defendant's

v. Foster, 829 F.Supp.2d 354, 361 (W.D. Vir. 2011) (collecting cases).

Exhibit 3(b) was not prepared for use in Defendant's case and it is not used to prove an element of the offense. Unlike Melendez-Diaz, where evidence was seized from the defendant and sent out to a laboratory for analysis, Exhibit 3(b) is the result of a routine accuracy check of the radar device which occurred two years prior to the incident. The certificate is presented to attest to the accuracy of the tuning forks on the date that it was tested, from which the Court can draw an inference of accuracy of the radar unit on the date that it was used by Defendant Salter. As other courts have found, the certificate at issue here appears to fit squarely within the category of documents that have been found to be nontestimonial and do not require cross examination to be admitted at trial. See Foster, 829 F.Supp.2d at 362 (certificate of accuracy of Intox EC/IR II); United States v. Bacas, 662 F.Supp.2d 481, 484 (E.D. Vir. 2009) (certificate of accuracy of tuning forks used to test accuracy of radar unit); United States v. Forstell, 656 F.Supp.2d 578, 582 (E.D. Vir. 2009) (certificate of accuracy for laser and tuning forks); United States v. Thomas, at *5 (D. Md. May 7, 2014) (certificate for radar).

Although the Sixth Amendment guarantees the accused the right to confront witnesses against him, it "has always had certain well-recognized exceptions." Dowdell v. United States, 221 U.S. 325, 331 (1911). "Collateral facts that do not speak to a defendant's guilt or innocence have been excepted from Sixth Amendment protection." Bacas, 662 F.Supp.2d at 485. "Neutral statements that relate only to the operation of a machine constitute such collateral facts." Id.

Exhibit 3(b) states that the radar unit and tuning forks were submitted to Wescom for testing regarding accuracy, Mr. Cole performed accuracy testing on the radar unit and tuning forks, and determined that they met or exceeded the existing performance standards. Mr. Cole tested the radar unit and tuning forks on August 16, 2012 and certified that they would give accurate measurement of the speed of a motor vehicle when properly calibrated and operated by a trained operator to within plus or minus one mile per hour. The Court finds that since the primary purpose of Exhibit 3(b) was for routine maintenance of the equipment, it was not prepared for use at trial, and is not being used to prove an element of the offense, the certification is not testimonial and its admission does not violate the Confrontation Clause. Defendant's

objection is overruled and Exhibits 3(a) and (b) are admitted into evidence.

### B.     Application of the California Vehicle Code

In his trial brief and during the trial, Defendant argued that Ranger Salter does not meet the certification requirements for operating a radar unit and the radar unit calibration requirements do not comply with California Vehicle Code section 40802(A). Defendant contends that Section 4 of Title 36 of the Federal Code of Regulations makes state law applicable to the use of radar units for detecting unlawful speed.

Congress enacted 16 U.S.C. § 3 which provides that the Secretary of the Interior ("Secretary") has the authority to make and publish rules and regulations necessary for use and management of the parks under the jurisdiction of the National Park Service. Section 3 is applicable to Sequoia National Park. 16 U.S.C. § 43.

Pursuant to the authority granted by Congress, the Secretary promulgated Section 4.2 which states that "[u]nless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law." "Violating a provision of state law is prohibited." 36 C.F.R. § 4.2(b). This allows violations of state law to be incorporated as a violation of federal law. United States v. Rogers, 865 F.Supp. 718, 720 (D. Colo. 1994). "Section 4.2 is in essence and effect an assimilation statute, providing for the incorporation of substantive offenses which have not otherwise been provided for in the Regulations." United States v. Farmer, 820 F.Supp. 259, 263 (W.D. Va. 1993). Essentially, section 4.2 allows state law violations to be charged where there is a gap in federal law. United States v. Reed, 878 F.Supp.2d 1199, 1204-05 (D. Nev. 2012). Defendant has been charged with a violation of 36 C.F.R. § 4.21(c) which is specifically addressed in the federal regulations so section 4.2 is inapplicable to the offense charged.

Section 40802 of the California Vehicle Code states that when using radar the officer must have completed a course of not less than 24 hours that is approved and certified by the Commission on Peace Officer Standards and Training[2] and the radar device must have been

---

[2] The Commission on Peace Officer Standards and Training is an agency created by the California Department of Justice which "develops and implements programs to increase the effectiveness of law enforcement and provides

calibrated within three years prior to the alleged violation. Cal. Veh. Code § 40802(c)(1)(A)(D). This section does not set forth a violation of state law. Defendant's objections regarding an officer's certification as a radar operator and the calibration requirements of the radar unit are state evidentiary or procedural requirements and are not binding in a federal court. Farmer, 820 F.Supp. at 264; see also United States v. Shoebridge, 46 F.Supp.3d 932, 936 (D. Az. 2014) ("State procedural rules do not apply to ACA prosecutions in federal court."); United States v. Wudu, No. 1:11cr130-LO, 2011 WL 5122666, at *3 (E.D. Va. Sept. 20, 2011) (finding Virginia's laser recertification requirement administrative and not adopted under federal law). Ranger Salter testified that he received certification from the manufacturer which is sufficient to certify him under the federal regulations.

The California law requirements under section 40802 for training and certification do not apply to Ranger Salter or the radar unit certification.

### C. Violation of 36 C.F.R. § 4.21(c)

To prove a violation of 36 C.F.R. § 4.21(c), the Government must establish beyond a reasonable doubt that Defendant Sage was operating the vehicle at a speed in excess of the speed limit. Ranger Salter testified that he received training in traffic violations, including visual estimation of a vehicle's speed and radar operations. Ranger Salter confirms his visual estimation with the use of a radar unit and is accurate within one to two miles per hour approximately ninety five percent of the time. Ranger Salter testified that many of the instances where he is not accurate to within one to two miles per hour are attributable to weather conditions or because the vehicle was a motorcycle which makes it more difficult to estimate speed. On the date in question there were no factors that would have affected his ability to visually estimate the speed that Defendant was travelling or the accuracy of the radar unit.

The Court finds that Ms. Paulsen's testimony was consistent with that of Ranger Salter. Although Ms. Paulsen testified that she observed Ranger Salter's vehicle at the same spot that Ranger Salter testified he first saw Defendant's vehicle, Ranger Salter travels regularly on the

---

education and training for peace officers." Comm'n On Peace Officer Standards And Training v. Superior Court, 42 Cal. 4th 278, 285 (2007) (internal punctuation omitted).

General's Highway and for that reason is familiar with the roadway. Ms. Paulsen provided no testimony regarding her familiarity with the roadway. Due to Ranger Salter's familiarity with the General's Highway, the Court gives substantial weight to Ranger Salter's description of where he was when he first observed Defendant's vehicle.

Ms. Paulsen stated that she first saw the ranger's vehicle when they were approaching the Clover Creek Bridge. From this testimony, the Court finds that she did not see the ranger until after Ranger Salter observed Defendant's vehicle. Ranger Salter testified that he observed Defendant's vehicle and estimated his speed at approximately 55 miles per hour. He checked his radar unit which confirmed the speed at 56 miles per hour. Ranger Salter then observed that the brakes were applied and the vehicle slowed down to approximately 40 miles per hour. Ms. Paulsen testified that Defendant slowed as he was coming upon the curve in the roadway. She saw the ranger's vehicle and glanced over at the speedometer which showed Defendant was travelling 35 to 40 miles per hour. This testimony is consistent with Ranger Salter's testimony of what he observed.

The Court finds that the Government has proved beyond a reasonable doubt that Defendant Sage was traveling in excess of the posted speed limit of 35 miles per hour and is hence guilty of a violating 36 C.F.R. § 4.21(c).

### III.

### CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that the defendant is adjudged GUILTY of the offense and this matter is set for sentencing on June 4, 2015, at 10:00 a.m. in Courtroom 9. The parties may file a sentencing memorandum one week prior to the sentencing hearing. Defendant is ORDERED to be present for the sentencing on June 4, 2015.

IT IS SO ORDERED.

Dated:   **April 15, 2015**

UNITED STATES MAGISTRATE JUDGE